[Dkt. Ent. 79]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

JOSEPH BURGESE and ANNA
BURGESE,

      Plaintiffs,

          v.

STARWOOD HOTELS & RESORTS
WORLDWIDE, INC., et al.,

      Defendants.

Civil Action No. 13-cv-03341

OPINION

Appearances:
Lance Rogers
Rogers & Associates, LLC
25 Elliott Avenue
Bryn Mawr, PA  19010
    Attorney for Plaintiffs

Jay A. Gebauer
Mark Gregory Materna
Post & Schell, PC
Overlook Center
100 Overlook Drive
2d Floor
Princeton, NJ  08540
    Attorneys for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon a partial motion to dismiss filed by Defendants 2201 Collins Fee, LLC ("2201 Collins"), Starwood Hotels & Resorts, Inc. ("Starwood"), and W Hotel Management, Inc. ("W Hotel," and collectively the "Defendants"). (Dkt. Ent. 79.) Defendants seek to dismiss Counts

1

I and II of the Amended Complaint, which allege violations of the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. § 772.101 et seq., Florida's equivalent of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").[1]

## I.   Factual Background

This matter arises out of an incident that occurred on January 19, 2013 while Plaintiffs Joseph and Anna Burgese (the "Plaintiffs") were guests of the W South Beach Hotel in Miami Beach, Florida. (Am. Compl. ¶¶ 8-10.) Plaintiffs regularly stayed at the W South Beach Hotel. (Id. at ¶ 9.) Plaintiffs allege that, on January 19, Plaintiffs were walking through the hotel lobby when Plaintiff Anna Burgese ("Ms. Burgese") "was the subject of an unprovoked, sudden, violent attack by an unknown number" of Jane Doe defendants. (Id. at ¶ 10.) Specifically, Ms. Burgese, "a petite lady," was tackled by a woman from behind "with such force that she flew out of her shoes" and "was driven face first into the stone floor," where her attacker[2] struck her repeatedly. (Id. at ¶¶ 11-14.) Plaintiffs further allege that Mr. Burgese sought the assistance of a hotel employee and

---

[1] The Florida statute is hereinafter referred to as the "Florida RICO Act."

[2] Although the Amended Complaint alleges that the number of attackers is unknown, several allegations refer to only a single attacker. (Compare Am. Compl. ¶ 10 (referring to unknown number), with id. at ¶ 11 (alleging Ms. Burgese was tackled by a single assailant).)

demanded that the staff detain the attackers until the police could arrive. (Id. at ¶ 15.) Hotel staff allegedly informed Mr. Burgese they would do so and one employee purportedly stated that staff knew the assailant's identity. (See id. at ¶¶ 16-17.) Plaintiffs relied upon the hotel staff's assurances, and so "took no further action to pursue, identify or detain the attackers at that time." (Id. at ¶ 19.) Ms. Burgese apparently went to the hospital in an ambulance. (Id. at ¶ 23.)

According to the Amended Complaint, however, the staff assisted the attacker(s) with obtaining a taxi or taxis to facilitate their escape, and failed to identify them for either Plaintiffs or the police. (Id. at ¶¶ 21, 57.) Staff also later claimed not to know the identity of the attacker(s). (Id. at ¶ 20.) Consequently, the attacker(s) remain unidentified. (See id. at ¶ 22.) Despite the fact that the identity or even number of the attackers is unknown, Plaintiffs allege that their investigation revealed that they were prostitutes who "would have provided information that demonstrated Starwood and W Hotels [sic] complicity in the prostitution activity at the South Beach W." (Id. at ¶¶ 54-55.)

After Plaintiffs filed suit in May 2013, they and their agents undertook an investigation into prostitution activity at W Hotels in South Beach and New York, New York. (See id. at ¶ 27.) Plaintiffs allege that their investigation reveals that

3

Starwood and W Hotels "welcome prostitutes into their hotels in order to entice wealthy customers to spend money on hotel services," informed employees that prostitutes were "welcome and good for business," and staff openly arrange meetings between prostitutes and guests. (See id. at ¶¶ 37, 38, 41, 45.) Plaintiffs further allege that management is aware of the prostitution activity and "manages it." (Id. at ¶ 45.) It is alleged that Starwood and W Hotels "not only tolerate[], but openly allow[] and promote[] prostitution" at their hotels (see, e.g., id. at ¶¶ 67, 72, 82), so as to "entice wealthy customers to spend money on hotel services, thus increasing corporate profits" (id. at ¶ 37).

## II.  Procedural Background

Plaintiffs commenced this action on May 28, 2013 against Defendants Starwood, 2201 Collins, and unnamed individuals who allegedly attacked Ms. Burgese. (Dkt. Ent. 1.) United States Magistrate Judge Ann Marie Donio subsequently scheduled a settlement conference for March 21, 2014, and ordered the parties to exchange settlement memoranda. (Dkt. Ent. 35.) On August 14, 2014, Judge Donio entered an amended scheduling order establishing an August 29, 2014 deadline for filing amended pleadings. (Dkt. Ent. 53.)

On August 29, 2014 Plaintiffs filed a motion for leave to file an amended complaint that included additional allegations

discovered through an "investigation" that Plaintiffs undertook at other Starwood hotels subsequent to the filing of this matter. Defendants opposed the motion, arguing among other things that the proposed amended complaint contained "lurid, sensational and salacious allegations." In addition, Defendants argued that Plaintiffs had been using the anticipated negative publicity from these allegations to pressure Defendants into a higher settlement. (See Dkt. Ent. 58 at 3.) On September 30, 2014, this Court held a hearing on Plaintiffs' motion, and denied leave to amend but permitted Plaintiffs to file a second motion for leave to amend. (Dkt. Ent. 67.)

On October 14, 2014, Plaintiffs filed their second motion (Dkt. Ent. 70), which Defendants again opposed. The Court held a hearing on the second motion on November 3, 2014, and directed Plaintiffs to file a pared-down version of their amended complaint. They filed the instant Amended Complaint on November 7, 2014, setting forth causes of action for violations of the Florida RICO Act (Counts I and II), negligence (Count III), and loss of consortium (Count VI) against all defendants, premises liability (Count IV) against Starwood and 2201 Collins, and assault (Count V) against the unnamed defendants.

Defendants Starwood, W Hotel, and 2201 Collins have moved to dismiss the Florida RICO Act counts, Counts I and II.

**III.   Standard**

    To withstand a motion to dismiss under Federal Rule of
Civil Procedure 12(b)(6), "a complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550
U.S. 544, 570 (2007)). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Id. at 663. "[A]n unadorned, the-defendant-
unlawfully harmed-me accusation" does not suffice to survive a
motion to dismiss. Id. at 678. "[A] plaintiff's obligation to
provide the 'grounds' of his 'entitle[ment] to relief' requires
more than labels and conclusions, and a formulaic recitation of
the elements of a cause of action will not do." Twombly, 550
U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286
(1986)).

    In reviewing a plaintiff's allegations, the district court
"must accept as true all well-pled factual allegations as well
as all reasonable inferences that can be drawn from them, and
construe those allegations in the light most favorable to the
plaintiff." Bistrian v. Levi, 696 F.3d 352 n.1 (3d Cir. 2012).
Only the allegations in the complaint, and "matters of public
record, orders, exhibits attached to the complaint and items

appearing in the record of the case" are taken into

consideration. Oshiver v. Levin, Fishbein, Sedran & Berman, 38

F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing Chester County

Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812

(3d Cir. 1990)).

**IV.  Analysis**

Pursuant to the Florida RICO Act, it is unlawful for any

person:

> (1) Who has with criminal intent received any proceeds
> derived, directly or indirectly, from a pattern of
> criminal activity or through the collection of an
> unlawful debt to use or invest, whether directly or
> indirectly, any part of such proceeds, or the proceeds
> derived from the investment or use thereof, in the
> acquisition of any title to, or any right, interest,
> or equity in, real property or in the establishment or
> operation of any enterprise.
> (2) Through a pattern of criminal activity or through
> the collection of an unlawful debt, to acquire or
> maintain, directly or indirectly, any interest in or
> control of any enterprise or real property.
> (3) Employed by, or associated with, any enterprise to
> conduct or participate, directly or indirectly, in
> such enterprise through a pattern of criminal activity
> or the collection of an unlawful debt.
> (4) To conspire or endeavor to violate any of the
> provisions of subsection (1), subsection (2), or
> subsection (3).

Fla. Stat. § 772.103(1)-(4). In order to assert a claim, the

plaintiff must establish a RICO enterprise and "a pattern of

racketeering activity." See, e.g., Jackson v. BellSouth

Telecomm'ns, 372 F.3d 1250, 1264 (11th Cir. 2004).

7

Defendants argue that (1) Plaintiffs lack standing under the Florida RICO Act because they have failed to allege an injury to their business or property, which Defendants contend is required under § 772.104; (2) Plaintiffs lack standing because they have failed to identify or plead a viable RICO enterprise; (3) Plaintiffs cannot demonstrate that their injuries were proximately caused by the predicate acts; and (4) these deficiencies also necessitate dismissal of the Florida RICO Act conspiracy claim. In addition, Defendants contend they are entitled to reasonable attorneys' fees as Plaintiffs' claims lack substantial factual or legal support. The Court addresses these arguments in turn below.

### A. Injury to Business or Property

Defendants first argue that Plaintiffs' Florida RICO Act claims must be dismissed for failure to allege an injury to "business or property." In support, Defendants cite extensive case law interpreting a similar civil remedies provision of 18 U.S.C. § 1964, the federal RICO statute. Section 1964(c) provides, in relevant part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including reasonable attorneys' fees . . . .

8

18 U.S.C. § 1964(c). This section has been interpreted by the courts to preclude those actions in which a plaintiff alleges only physical injury or pecuniary losses flowing from that personal injury. See, e.g., Zimmerman v. HBO Affiliate Grp., 834 F.2d 1163, 1169 (3d Cir. 1987) ("The named plaintiff has alleged only injury in the nature of mental distress, not an injury 'in his business or property.' Therefore he has no cause of action on a RICO claim . . . ."); Ehrich v. B.A.T. Indus. P.L.C., 964 F. Supp. 164, 167 (D.N.J. 1997) ("In the instant case, plaintiffs' core injuries are medical in nature (i.e., nicotine addiction, carcinoma and lung tumors, and lung cancer), not proprietary, and any incidental financial consequences do not give rise to a claim under 18 U.S.C. § 1964(c)."); Evans v. City of Chicago, 434 F.3d 916, 930-31 (7th Cir. 2006) ("Accordingly, we reaffirm our holding in Doe v. Roe, and in doing so reiterate this court's understanding that personal injuries, and the pecuniary losses flowing from those injuries, are insufficient to establish standing under the civil RICO, § 1964(c). We also hold that foregone earnings stemming from the lost opportunity to seek or gain employment are, as a matter of law, insufficient to satisfy § 1964(c)'s injury to 'business or property' requirement where they constitute nothing more than pecuniary losses flowing from what is, at base, a personal injury."); see also Magnum v. Archdiocese of Phil., 253 F. App'x 224, 229 (3d

9

Cir. 2007) ("[W]e conclude that any damages Appellants may have
sustained from the lost opportunity to bring personal injury
tort claims against the Archdiocese do not constitute 'injury to
business or property' within the meaning of 28 U.S.C.
§ 1964(c)."). As the Third Circuit has recognized, the "business
or property" injury limitation ensures that "RICO is not
expanded to provide a federal cause of action and treble damages
to every tort plaintiff." Maio v. Aetna, Inc., 221 F.3d 472, 483
(3d Cir. 2000) (quoting Steele v. Hospital Corp. of Am., 36 F.3d
69, 70 (9th Cir. 1994)).

     Because the Florida statute was "patterned" after the
federal statute, Defendants ask this Court to import the same
restriction under the Florida RICO Act. Indeed, "Florida courts
often look to the Federal RICO decisions for guidance in
interpreting and applying [the Florida RICO Act]." Jackson v.
BellSouth Telecomm'ns, 372 F.3d 1250, 1264 (11th Cir. 2004)
(quoting Fla. Software Sys., Inc. v. Columbia/HCA Healthcare
Corp., 46 F. Supp. 2d 1276, 1284 (M.D. Fla. 1999)); see also
Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc., 881
So.2d 565, 570 (Fla. App. 3d Dist. 2004) ("Because of the
similarities between Florida and federal RICO acts, Florida
looks to federal authority regarding the interpretation and
application of its act." (citations omitted)); O'Malley v. St.
Thomas Univ., Inc., 599 So.2d 999, 1000 (Fla. App. 3d Dist.

1992) ("Since Florida RICO is patterned after federal RICO, Florida courts have looked to the federal courts for guidance in interpreting and applying the act. Therefore, federal decisions should be accorded great weight." (citations omitted)).[3] The Court declines to do so.

Although the Florida and federal RICO statutes are very similar, they differ in one key respect. Section 772.104 sets forth the civil cause of action under the Florida RICO Act and provides, in relevant part:

> Any person who proves by clear and convincing evidence that **he or she has been injured** by reason of any violation of the provisions of s. 772.103 shall have a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

Fla. Stat. § 772.104(1) (emphasis added). Unlike the federal RICO statute, the Florida RICO Act by its plain language does not restrict injuries to "business or property" injuries. Indeed, this is precisely what the court held in Townsend v. City of Miami, et al., No. 03-21072, slip op. (S.D. Fla. Nov. 7, 2007). There, the plaintiff sued former police officers and city

---

[3] In its opening motion papers, Defendants rely heavily on the Florida District Court of Appeals' decision in O'Malley v. St. Thomas University, Inc. That decision, however, rested on the plaintiffs' failure to plead a direct injury under the Florida RICO Act and did not address whether the Florida RICO Act required an injury to "business or property" like its federal counterpart. See 599 So.2d at 999-1000.

officials for <u>inter</u> <u>alia</u> violations of the federal and Florida

RICO Acts, alleging lost employment, employment opportunities,

wages, and personal injuries in the form of actual physical

harm. Slip op. at 2. The court noted that "[t]he phrase

'business or property' [in the federal RICO statute] is a

limiting one that excludes personal injuries and resulting

pecuniary losses such as loss of earnings and pain and

suffering," and thus dismissed the federal RICO claims. <u>Id.</u> at 3

(citing <u>Grogan v. Platt</u>, 835 F.2d 844, 846-47 (11th Cir. 1988)).

As to the Florida RICO Act, however, the court held:

> The defendants further argue that Mr. Townsend's
> failure to allege a business or property injury is
> also fatal to his claim under the Florida RICO
> statute. I disagree. Unlike its federal counterpart,
> the Florida RICO statute is not limited to 'business
> or property' injuries. <u>See</u> Fla. Stat. § 772.104(1). To
> state a civil claim under the Florida RICO statute,
> all a plaintiff has to allege is (1) a violation of
> Fla. Stat. § 772.103, and (2) an injury as a result of
> this violation. <u>See</u> Fla. Stat. § 772.104(1). The plain
> language of the Florida statute does not exclude
> pecuniary losses resulting from personal injury.
> Accordingly, Mr. Townsend can sue under the Florida
> RICO statute for his loss of employment and personal
> injuries.

Slip op. at 4. The Court finds the reasoning of the court's

decision in <u>Townsend</u> persuasive.[4] <u>See also</u> <u>Ruth v. Dep't of Legal</u>

---

[4] According to Plaintiffs, "[t]he Eleventh Circuit Court of
Appeals affirmed without opinion the <u>Townsend</u> decision." (Opp.
at 8.) It is perplexing how Plaintiffs can make such statement.
It appears from a review of the docket that this issue was never
even appealed to the Circuit; rather, the parties appealed the
denial of sovereign immunity, which the Circuit dismissed for

_Affairs_, 684 So.2d 181, 184-85 (Fla. 1996) (finding "the federal RICO act does not provide us with any guidance" as to whether the court has jurisdiction to determine property rights in a civil forfeiture action because "[u]nlike the Florida RICO act, the federal RICO act does not include a civil forfeiture provision").

Plaintiffs also rely upon _Spadara v. City of Miramar_, 855 F. Supp. 2d 1317, 1352-53 (S.D. Fla. 2012), arguing that, in _Spadaro_, "the Court went on to permit the plaintiff to proceed with Florida RICO claims by specifically recognizing that 'the Florida RICO statute, unlike its federal counterpart, does not require an injury to business or property.'" (Opp. at 8 (citing _id._ at 1352 n.29).) Plaintiffs blatantly misstate the holding in _Spadaro_. The footnote in which this language cited by Plaintiffs is found states in whole:

> In his opposition, Caravella argues that the Florida RICO statute, unlike its federal counterpart does not require an injury to business or property. City Response at 27 (citing Fla. Stat. § 772.104(1)). However, **the City Defendants only argue that Caravella's claims brought pursuant to 18 U.S.C. § 1962 should be dismissed on this basis**. _See_ City Motion at 28.

_Spadara_, 855 F. Supp. 2d at 1352 n.29 (emphasis added). In other words, the City Defendants argued only that the federal RICO

---

lack of jurisdiction. _See_ _Townsend_, No. 03-21072, Dkt. Ents. 228, 284. The case settled soon thereafter. _Id._, Dkt. Ent. 290.

claims must be dismissed for failure to allege an injury to
business or property; because they did not move to dismiss the
Florida RICO Act claim on this ground, the district court was
not required to address the plaintiff's argument. In any event,
the district court did <u>not</u> hold, as Plaintiffs contend, that the
Florida RICO Act does not require an injury to business or
property. Moreover, the court dismissed the Florida RICO Act
claims in <u>Spadaro</u> on other grounds, including the failure to
allege a pattern of racketeering activity. <u>See</u> <u>id.</u> at 1252-53.
As such, this case does not support Plaintiffs' arguments.

Regardless, persuaded by <u>Townsend</u>, this Court finds that
Plaintiffs have adequately alleged injuries cognizable under the
Florida RICO Act. The Amended Complaint alleges that Ms. Burgese
was the subject of a violent and unprovoked attack by a
prostitute and suffered serious physical injury and mental
anguish that has prevented her from returning to work. (<u>See</u> Am.
Compl. ¶¶ 10, 24, 93, 95.) Such allegations are sufficient to
survive a motion to dismiss.

### B. Enterprise

Defendants next argue that Plaintiffs have failed to allege
a RICO "enterprise" for several reasons. First, Defendants
contend that Plaintiffs have failed to allege a distinct RICO
"enterprise" through which Defendants allegedly engaged in
racketeering activity. "A RICO enterprise exists 'where a group

14

of persons associates, formally or informally, with the purpose
of conducting illegal activity.'" Jackson, 372 F.3d at 1264
(United States v. Hewes, 729 F.2d 1302, 1311 (11th Cir. 1984));
Spadaro, 855 F. Supp. 2d at 1348. The Florida RICO Act defines
an enterprise as

> any individual, sole proprietorship, partnership,
> corporation, business trust, union chartered under the
> laws of this state, or other legal entity, or any
> unchartered union, association, or group of
> individuals associated in fact although not a legal
> entity; and the term includes illicit as well as licit
> enterprises and governmental, as well as other,
> entities.

Fla. Stat. § 772.102(3).

Courts have held that the "enterprise" must be distinct
from the defendant person sued under the statute. See Palmas Y
Bambu, 881 So.2d at 570. "Where [] an entity is both the
'person' [sued] and the **sole entity** comprising the 'enterprise,'
the distinctness required does not exist." Id. (emphasis added).
Distinctness cannot be overcome by alleging an enterprise
consisting of a corporate defendant associating with its
employees and carrying out the defendant's regular business. See
id. at 575 ("Under these facts, no distinctness exists because
the distinctness requirement cannot be circumvented by 'alleging
a RICO enterprise that consists merely of a corporate defendant
[person] associated with its own employees or agents carrying on
the regular affairs of the defendant' . . . ." (citation

15

omitted)). This is so because a corporation can only act through its employees and agents and thus all activities could be viewed as acts of an "enterprise" that exists only of the defendant. See id. (quoting Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994)). However, "[t]he prohibition against the unity of person and enterprise applies only when the singular person or entity is defined as both the person and the **only entity comprising the enterprise**." United States v. Goldin Indus., Inc., 219 F.3d 1271, 1275 (11th Cir. 2000). Such is not the case here.

When viewed in a light most favorable to Plaintiffs, the Amended Complaint alleges that Starwood, W Hotel, and 2201 Collins, each acting through their employees, and various unnamed prostitutes associated with one another for the purpose of increasing profits through institutionalized prostitution. (See, e.g., Am. Compl. ¶ 41 ("Starwood and W Hotels staff openly arrange meetings with prostitutes."); ¶ 42 (Starwood and W Hotels employees were on duty and working under the eye of management when they engaged in acts in furtherance of the prostitution activity."); ¶ 43 (Starwood and W Hotels employees took pictures with prostitutes in the main lobby of the W Hotels (South Beach W), security guards checked with front desk staff about the availability of prostitutes (Hollywood W) and used the concierge's desk to store their purse and charge their cell

phones (New York W).”); ¶ 45 (“A W Hotels manager (S.) stated
that management was aware of the prostitution activity and
‘manages it.’”); ¶ 46 (“There is a conspiratorial relationship
between the W Hotels and prostitutes.”); ¶ 86 (“The predicate
acts of racketeering all have the same method of commission,
bellboys/doormen and security guards, acting at either the
explicit or tacit direction of management, obtained prostitutes
for guests at W Hotels.”).) Thus, even if the W Hotel, Starwood,
and 2201 Collins are all deemed a single entity operating
through its employees, the Amended Complaint can be read to
allege that the prostitutes are also part of the enterprise.

Second, Defendants argue that Plaintiffs have failed to
plead a controlling association or a common purpose. The Supreme
Court of Florida has held that under the Florida RICO Act, an
“enterprise” consists of “(1) an ongoing organization, formal or
informal, with a common purpose of engaging in a course of
conduct, which (2) functions as a continuing unit.” Gross v.
State, 765 So.2d 39, 45 (Fla. 2000) (citing United States v.
Turkette, 452 U.S. 576, 583 (1981)). In so holding, the Florida
Supreme Court specifically declined to adopt a narrow approach
to “enterprise” that required proof of an “ascertainable
structure” such as that suggested by Defendants here. See Gross,
765 So.2d at 45; see also United States v. Zielie, 734 F.2d
1447, 1463 (11th Cir. 1984), abrogated on other grounds by

United States v. Chestang, 849 F.2d 528, 531 (11th Cir. 1988) ("An enterprise need not be a 'duly formed corporation that elects officers and hold annual meetings . . . .' It can be a loose and informal 'amoeba-like infra-structure that controls a secret criminal network . . . .' The precedent in this circuit clearly indicates that 'a RICO enterprise exists where a group of persons associate, formally or informally, with the purpose of conducting illegal activity.'" (citations omitted)).

Here, Plaintiffs allege a "loose" association consisting of Defendants (acting through their employees and managers) and unnamed prostitutes whereby Defendants' employees would contact the prostitutes and arrange meetings with hotel guests. (See Am. Compl. ¶¶ 41-46.) Moreover, Plaintiffs' Amended Complaint can be read to allege a "common purpose" of furthering an institutionalized prostitution scheme to increase profits for the participants. (See Am. Compl. ¶¶ 44, 85); Gross, 765 So.2d at 46 ("The first element, requiring proof of the existence of an ongoing organization with a common purpose of engaging in a course of conduct, . . . may be proved with evidence of the common purpose among the members."). These allegations, though thin, are sufficient for purposes of this motion.[5]

_____

[5] The Court notes that, to the extent Defendants challenge the bareness of Plaintiffs' allegations regarding the enterprise and the roles of the various associates, employees, and members, Defendants had earlier sought to pare down Plaintiffs' proposed

## C. Pattern of Racketeering Activity

Defendants also argue that the Florida RICO Act claims must be dismissed for failure to allege a pattern of racketeering activity. Specifically, Defendants contend that Plaintiffs must allege two or more predicate acts, at least one of which must predate the injury. Under the Act, a pattern of criminal activity

> means engaging in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents; provided that the last of such incidents occurred within 5 years after a prior incident of criminal activity.

Fla. Stat. § 772.102(4). To successfully allege a pattern of racketeering activity, a plaintiff must aver that: (1) the defendants committed two or more predicate acts within the applicable time period; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature. See Jackson, 372 F.3d at 1264; Spadaro v. City of Miramar, No. 11-61607, slip. op. at 7, Dkt. Ent. 154 (S.D. Fla. July 24, 2012). Plaintiffs here allege an "open-ended scheme [that] poses a clear threat of continuation." (Am. Compl. ¶ 89.) "To establish open-ended continuity, a

_____

amended complaints so as to eliminate the "lurid" and "sensational" detailed allegations that they seemingly now assert are necessary to state a claim.

plaintiff must establish that the predicate acts were the
enterprise's 'regular way of doing business' or threaten
repetition in the future." Spadaro, 855 F. Supp. 2d at 1351.
This necessitates proof of the "'similarity and interrelatedness
of racketeering activities [and] proof that a continuity of
particular criminal activity exists.'" Lugo v. State, 845 So.2d
74, 99 (Fla. 2003) (quoting State v. Lucas, 600 So.2d 1093, 1094
(Fla. 1992)).

    Plaintiffs have alleged several predicate acts
demonstrative of a pattern of racketeering activity:
(1) obstruction of justice and tampering with witnesses,
victims, or informants by assisting Ms. Burgese's attacker(s),
who were prostitutes, with escaping and then lying to prevent
Plaintiffs or the police from ascertaining the attacker(s)'
identity, or uncovering the prostitution scheme; (2-
3) racketeering and facilitating prostitution at the South Beach
W based upon Plaintiffs' October 2013 investigation; and (4-
5) racketeering and facilitating prostitution at the New York W
based upon Plaintiffs' November 2013 investigation. The Amended
Complaint alleges that this conduct is related and constitutes
part of the scheme to increase profits through prostitution.
(See, e.g., Am. Compl. ¶¶ 84-85.) It further alleges that the
predicate acts have the "same method of commission" and "same

participants" in that employees, acting at the direction of management, obtain prostitutes for guests. (See id. at ¶ 86.)

Even if, as Defendants suggest, at least one predicate act must occur prior to the alleged injury, Plaintiffs have done so here. Plaintiffs allege that the assailant(s) were prostitutes with knowledge of the prostitution scheme and Defendants' roles therein, such that it became necessary for Defendants' employees to facilitate the attacker(s)' escape so as to prevent them from informing the police of the scheme. (Am. Compl. ¶¶ 54-59.) In other words, Ms. Burgese's assailants participated in the prostitution scheme and were present at the South Beach W on January 19, 2013 in that capacity. While Plaintiffs ultimately may be unable to prove these facts, and, thus, their Florida RICO Act claims may ultimately fail on the merits (see Am. Compl. ¶ 22 ("the persons who attacked Plaintiff Anna Burgese have not been conclusively identified")), these allegations are sufficient at this stage to demonstrate promotion of prostitution activity and subsequent obstruction of justice in order to cover up the evidence of prostitution activity.[6]

_____

[6] The Court makes the following observation. Plaintiffs have alleged an inability to conclusively identify the purported assailant(s), but have also alleged that they were prostitutes with knowledge of the prostitution scheme that forms the sole basis of Plaintiffs' RICO claims. It is their participation in the prostitution scheme and their determination to protect it that allegedly resulted in the attack on Ms. Burgese. Should Plaintiffs be unable to prove the identity of the assailant(s),

21

Because the Amended Complaint alleges that similar activities occurred several months later, in October and November 2013, Plaintiffs have sufficiently alleged a pattern of racketeering activity that has been continuous and threatens to continue in the future.

### D. Proximate Cause

Defendants next contend that the alleged predicate acts are not the proximate cause of Plaintiffs' injuries. As with its federal counterpart, under the Florida RICO Act, the plaintiff must demonstrate that her injuries were proximately caused by the injurious conduct. See, e.g., Bortell v. White Mountains Ins. Grp., 2 So.3d 1041, 1047 (Fla. App. 4th Dist. 2009). "A wrongful act is 'a proximate cause if it is a substantial factor in the sequence of responsible causation.'" Green Leaf Nursery v. E.I. Dupont De Nemours & Co., 341 F.3d 1292, 1307 (11th Cir. 2003) (finding alleged witness tampering in federal products liability action not involving plaintiffs were not proximate cause of plaintiff's injuries in federal RICO case). In addition, "indirect injuries, that is, injuries sustained not as a direct result of predicate acts under [the Florida RICO Act] . . . will not allow recovery under Florida RICO." O'Malley, 599

---

their profession(s), or that they were present at the hotel pursuant to Defendants' alleged prostitution scheme, it is hard to see how Plaintiffs could prevail on their Florida RICO Act claims. Nevertheless, the claims may proceed at this stage.

So.2d at 1000; see also Bortell, 2 So.3d at 1047 ("Indirect harm
is insufficient to sustain a cause of action under the RICO
statutes."). Thus,

> It may well be true that the commission of the
> predicate acts constituted the "but for" cause of the
> [injury]. However, that tenuous a relation between the
> harm and the predicate acts is not sufficient to
> confer standing . . . RICO does not provide a remedy
> for every injury that may be traced to a predicate
> act.

Id. (quoting O'Malley v. O'Neill, 887 F.2d 1557, 1561 (11th Cir.
1989)).

Plaintiffs aver that "but for" Defendants' and the unnamed
prostitutes' concerted promotion of prostitution activity in the
South Beach W on January 19, 2013, Ms. Burgese would not have
been attacked by the prostitutes and that Plaintiffs' injuries
were "foreseeable" because "[p]rostitution is a crime inherently
rife with drugs and violence." (Am. Compl. ¶ 96.) Even if true,
it is clear under O'Malley that being the "but for" cause or
"reasonably foreseeable" result alone is insufficient. Here,
however, the Court finds that Plaintiffs have sufficiently
alleged at this stage a direct injury. Ms. Burgese's attacker(s)
were allegedly present at the hotel as part of the prostitution
scheme, and, according to Plaintiffs, attacked Ms. Burgese in an
attempt to protect their organization. (See Opp. at 2.) Thus,
the Amended Complaint adequately alleges that Ms. Burgese's
physical injuries and the losses stemming therefrom were a

direct consequence of the promotion of prostitution activity by
Defendants.

### E. Florida RICO Conspiracy

Finally, Defendants argue that Plaintiffs' conspiracy claim
fails for the same reasons that Plaintiffs' substantive RICO
claim fails. The Court rejects these arguments for the same
reasons set forth above.

In addition, Defendants contend that Plaintiffs have failed
to adequately allege an agreement or knowledge that the
predicate acts were part of a pattern of racketeering activity.
See K. Kay Shearin v. E.F/. Hutton Grp., Inc., 885 F.2d 1162,
1166 (3d Cir. 1989) (setting forth elements of federal RICO
conspiracy claim as "the period of the conspiracy, the object of
the conspiracy, and the certain actions of the alleged
conspirators taken to achieve that purpose," as well as
agreement and knowledge). The Court disagrees. Plaintiffs have
alleged that Defendants welcome prostitutes into their hotels
and that management informs employees that prostitutes are
welcome. (Am. Compl. ¶¶ 37, 38.) Staff allegedly arranges
meetings between prostitutes and guests, facilitates the storage
of prostitutes' personal effects while they are at the hotel,
and at least one manager stated that hotel management is aware
of the prostitution activity and "manages it." (Id. at ¶ 45.)

These allegations are sufficient to demonstrate agreement and knowledge for purposes of this motion.

### F. Attorneys' Fees

Defendants contend that they are entitled to reasonable attorneys' fees in defending Plaintiffs' "baseless" Florida RICO Act claims. Under the Florida RICO Act, a defendant "shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support." Fla. Stat. § 772.104(3). As Defendants correctly note, this standard is "less strict" than other Florida fee-shifting provisions; "it is not necessary that the court find a "complete absence of a justiciable issue of either law of fact, but only "that the claim lacked 'substantial fact or legal support.'" Hartford Ins. Co. of the Midwest v. Miller, 681 So.2d 301, 302 (Fla. App. 3d Dist. 1996) (quoting Foreman v. E.F. Hutton & Co., 568 So.2d 531, 532 (Fla. App. 3d Dist. 1990)). This fee-shifting provision is designed "to discourage frivolous Rico claims or claims brought for the purpose of intimidation because the stigma and burden of defending such claims is so great." Id. While Defendants ultimately may be entitled to fees in the event that the Florida RICO Act claims are dismissed with

prejudice or a verdict is entered in Defendants' favor,[7] the Court must deny the request without prejudice in light of its finding that the claims may proceed at this stage.

**V.  Conclusion**

For the reasons set forth above, the Court finds that, at this stage and drawing all reasonable inferences in Plaintiffs' favor, the Amended Complaint adequately alleges claims under the Florida RICO Act and, therefore, Defendants' motion must be denied.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

---

[7] Moreover, Defendants may be entitled to fees even if Plaintiffs were to prevail on other counts. See Hartford Ins. Co., 681 So.2d at 302.